**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Marshall Reese,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-18-03403-PHX-DLR<br><br>**ORDER** |

At issue is the Commissioner of Social Security's ("Commissioner") denial of Plaintiff's application for Title II Disability Insurance Benefits under the Social Security Act ("Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of the decision, and the Court now considers Plaintiff's Opening Brief (Doc. 19, "Pl. Br."), the Commissioner's Response (Doc. 24, "Def. Br."), Plaintiff's Reply (Doc. 25, "Reply"), and the Administrative Record (Doc. 13, "R."). For the following reasons, the Court will affirm the decision.

**I.  BACKGROUND**

Plaintiff filed her application on August 26, 2014, alleging disability as of July 24, 2011. (R. at 17.) The Commissioner denied the application initially and upon reconsideration, and a hearing before an administrative law judge ("ALJ") was held on March 14, 2017. (*Id.*) The ALJ issued a decision finding Plaintiff not "disabled" (*Id.* at 17–27), which was upheld by the Appeals Council and thus final (*Id.* at 1–3). Therein, the ALJ found Plaintiff had "severe" impairments of status post cervical spine surgery, cervical

spine impairment, reflex sympathetic dystrophy and/or complex region pain syndrome and status post multiple surgeries to the left arm, and a history of headaches. (*Id.* at 19.) The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level as defined in 20 C.F.R. § 404.1567(b) except that she could stand/walk for six hours; sit for six hours; and occasionally climb ramps and stairs, but never ropes, scaffolds, or ladders. (*Id.* at 20.) She had no use of her left (non-dominate) arm/hand "other than as a helper." (*Id.*) She had to avoid concentrated exposure to loud noise and all exposure to unprotected heights and moving and dangerous machinery. (*Id.*)

## II. LEGAL STANDARD

The Court only reviews issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause for a rehearing. 42 U.S.C. §§ 405(g), 1383(c). The Court may set aside the decision only when it is not supported by "substantial evidence" or is based on legal error. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* at 674–75. "Yet [the Court] must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* at 675. The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [the ALJ] did not rely." *Id.* The Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Such is the case where the error is "inconsequential to the ultimate nondisability determination" or where the ALJ's "path may reasonably be discerned, even if the [ALJ] explains [his or her] decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

The ALJ determines whether a claimant is "disabled" under the Act using a five-step sequential evaluation. 20 C.F.R. § 404.1520(a)(4). In brief, the ALJ must determine whether the claimant: (1) is "doing substantial gainful activity"; (2) has a "severe" medically determinable impairment or combination of impairments that has lasted more than 12 months; (3) has an impairment that "meets or equals" an impairment listed in appendix 1 of subpart P of 20 C.F.R. § 404; (4) can perform "past relevant work" based on his or her RFC; and (5) "can make an adjustment to other work" based on his or her RFC, age, education, and work experience. *Id.* The claimant bears the burden of proof at steps one through four until it shifts to the ALJ at step five. *Molina*, 674 F.3d at 1110.

## III. ANALYSIS

### A. The ALJ Properly Discounted Plaintiff's Subjective Testimony.

Plaintiff alleges the ALJ erred by rejecting her symptom testimony without specific, clear, and convincing reasons supported by substantial evidence. (Pl. Br. at 19–23.)

Absent evidence of malingering, an ALJ may only discount a claimant's subjective allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina*, 674 F.3d at 1112. General findings are not sufficient. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler*, 775 F.3d at 1099. An ALJ may consider: "(1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *see* 20 C.F.R. § 404.1529(c)(3); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled

effectively with medication are not disabling.").

### 1. Plaintiff reported relief from surgical interventions, which suggests her symptoms are not as severe as alleged.

As noted by the ALJ, Plaintiff underwent surgery for anterior cervical discectomy and fusion and did well postoperatively, only complaining of mild left shoulder pain for which she was given Vicodin. (R. at 22 (citing *id.* at 318–23.).) Plaintiff reported to Dr. Peter Campbell that a cervical decompression and fusion procedure performed by Dr. James Maxwell had "significantly improved her pain," though she "continued to have weakness" in her left upper extremity. (*Id.* at 22–23 (citing *id.* at 395–97).) However, physical therapy helped Plaintiff regain strength in her arm. (*Id.* at 438–43.) Dr. Campbell's physician assistant cleared her for work with no use of her left upper extremity, noting that "[Plaintiff] feels safe to return to work with restrictions." (*Id.* at 24 (citing *id.* at 397–402).) Dr. Campbell restricted her from lifting more than 5-10 pounds at work. (*Id.* at 400.) Later, Dr. Campbell noted that she had "increasing pain in the left forearm" that radiated to her left pectoralis musculature. (*Id.* at 403.) Following a nerve decompression, however, she reported that her pain was "much improved and well-controlled." (*Id.* at 23, 404.) This was short-lived as a month later she reported that the pain returned. (*Id.* at 405.) However, a month after that, she reported that the pain was "much improved as compared to preoperatively." (*Id.* at 23, 406.)

### 2. A lack of supportive medical evidence is relevant and suggests that Plaintiff's symptoms are not as severe as alleged.

The ALJ stated that "the objective medical evidence consisting of MRIs, EMGs, CTs, and other objective testing data . . . fail to provide a basis for [Plaintiff's] allegations." (*Id.* at 25.) While a lack of supportive medical evidence is insufficient by itself to reject a claimant's testimony, it is a relevant factor. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, the ALJ proffered other valid reasons for rejecting Plaintiff's testimony and thus did not err in relying on a lack of objective medical evidence. *See id.*

///

### 3. Substantial evidence does not show Plaintiff experienced relief from over-the-counter medications.

The ALJ found that Plaintiff "does experience pain and headaches from time to time, but as stated by [Plaintiff], the over the counter medication she takes helps her deal with these episodes." (*Id.* at 25 (citing *id.* at 444, 452, 497, 532, unspecified hearing testimony).) The first cited record indicates that Plaintiff has "constant" pain and that she indeed takes over-the-counter Advil; however, nothing in that record establishes that Advil effectively treats her pain. (*Id.* at 444–45.) The second record notes that Plaintiff has headaches and treats those headaches with "ibuprofen anywhere from four to eight tablets per day." (*Id.* at 452.) Again, nothing in that record establishes that the over-the-counter medication effectively treats her symptoms. (*Id.*) The third record, again, fails to show that Plaintiff experienced relief from over-the-counter medications. (*Id.* at 497.) To the contrary, it states that she has failed several other medications for treating her pain. (*Id.*) Moreover, this record is from Dr. Scott, who Plaintiff was referred to because "her nerve mediated pain is poorly controlled despite the continued use of narcotics and benzodiazepine."[1] (*Id.* at 416.) The last record, also from Dr. Scott, likewise fails to show that Plaintiff experienced any relief from over-the-counter medications. (*Id.* at 532.) As for the hearing testimony, the ALJ does not cite what particular testimony establishes that Plaintiff experienced relief from over-the-counter medications, in error. However, upon the Court's review of the testimony, it appears that Plaintiff only testified that over-the-counter medications help with headaches, but at no point did she testify that they help her pain. (*Id.* at 44–45.) She testified that she takes Trazodone to sleep, Tylenol PM, Excedrin, and Advil throughout the day, but again, there is no testimony establishing that any of these *effectively* treated her pain. (*Id.* at 43.) Thus, upon consideration of the record as a whole, the ALJ's finding and conclusion are unsupported by substantial evidence. However, the ALJ's error here is harmless as the ALJ proffered other reasons for rejecting Plaintiff's testimony that

---

[1] It is not entirely clear if narcotics truly failed to treat Plaintiff's pain or whether she simply failed to take them for fear of addiction as records show that she requested a narcotic refill from one of her physicians. (R. at 43, 411.)

the Court finds valid and supported by substantial evidence. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (holding ALJ's reliance on a reason found invalid was "harmless error" where ALJ had also relied on reasons found valid).

### B. The ALJ Committed No Harmful Error In Rejecting The Opinion Of Dr. Scott, Plaintiff's Treating Physician.

Plaintiff alleges that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting the opinion of her treating physician, Dr. Jeffrey Scott. (Pl. Br. at 13–16; R. at 604–07 [Scott opinion].)

Generally, opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight.[2] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* An ALJ satisfies the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting evidence, stating his [or her] interpretation thereof, and making findings." *Id.*

In evaluating any medical opinion, the ALJ may consider: (1) whether the source examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical evidence; (4) the consistency of the opinion with the record as a whole; (5) the source's specialization; and (6) "other factors." 20 C.F.R. §§ 404.1527(c)(1)–(6); *Trevizo*, 871 F.3d at 675. An ALJ may reject an opinion that is "conclusory, brief, and unsupported by the record as a whole or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an

---

[2] A treating source's opinion is given "controlling weight" when it is "well-supported" by objective medical evidence and "not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). This is not the case here.

- 6 -

explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

The ALJ assigned "little weight" to Dr. Scott's opinion. (R. at 24.) Therein, Dr. Scott notes Plaintiff's diagnosis of complex regional pain syndrome ("CRPS") in her left arm and that she "carries the hallmark feature and diagnostic criteria of CRPS." (*Id.* at 604.) He directs the reader to Plaintiff's chart for further explanation of symptoms and pain. (*Id.*) He limits Plaintiff to less than 2 hours of standing or walking and about 4 hours of sitting, further opining that Plaintiff requires a job that permits shifting positions at will and periods of walking around. (*Id.* at 605.) He opines that Plaintiff will need to take two to three 10-15-minute unscheduled breaks throughout the day due to muscle weakness, chronic fatigue, and pain/numbness. (*Id.*) He further opines that Plaintiff will be off task 20% of the workday and will miss about 2 days of work per month. (*Id.* at 607.)

In weighing Dr. Scott's opinion, the ALJ noted that he "limits sitting and standing without providing a rationale and does little more than speculate about [Plaintiff] being off task and missing work due to pain and fatigue." (*Id.* at 24.) The ALJ found his opinion was "not consistent" with his other "opinions," which showed Plaintiff was negative for arthralgias, back pain, and myalgias and was increasing her activity level despite her headaches and left shoulder pain. (*Id.* (citing *id.* at 532, 535).) Additionally, the ALJ found his opinion was "inconsistent with the bulk of the medical evidence, wherein [Plaintiff had] been advised to return to work with the limitation of not using her left arm." (*Id.*)

The Court finds no reversible error. Indeed, Dr. Scott's opinion lacks rationale and support for his standing and sitting limitations. Both the opinion itself and Dr. Scott's treatment notes are devoid of explanation of any link between Plaintiff's well-documented left arm and hand pain and her abilities to stand and sit.[3] (*Id.* at 493–512, 532–42, 584–93.)

---

[3] Plaintiff maintains that "Dr. Scott's evaluation was not limited to assessment of effects from [her] neck and arm injuries" and that "[i]t is the very nature of complex regional pain syndrome that symptoms go far beyond what might be expected from the original injury." (Pl. Br. at 14.) However, that information was not stated in Dr. Scott's opinion or treatment notes. The ALJ therefore had no basis to conclude such and reasonably interpreted the evidence that was before him. Moreover, the Court notes that other physicians had opined

Additionally, Dr. Scott made no clinical findings regarding Plaintiff's ability to stand or sit, noting, rather, that Plaintiff was negative for arthralgias, back pain, and myalgias, as noted by the ALJ. (*Id.* at 24.) Dr. Scott made an identical finding at every appointment, noting no areas of pain other than Plaintiff's left arm and hand. (*Id.* at 493–512, 532–42, 584–93.) Moreover, nowhere in the many work status forms wherein he restricted Plaintiff from using her left arm did Dr. Scott prescribe a limitation for standing, walking, or sitting. (*Id.* at 496, 499, 539, 543, 594.) In fact, he consistently omitted any such restriction by declining to check the corresponding box. (*Id.*) Furthermore, Plaintiff, herself, when asked to rate how much pain interferes with her ability to walk on a scale of 1-10, circled 0. (*Id.* at 529.) She also reported no lower extremity weakness. (*Id.* at 452.) Thus, the ALJ did not err in according Dr. Scott's opinion "little weight" on this basis.

Similarly, the Court finds that Dr. Scott's opinions as to the number of days Plaintiff will be absent from work and her productivity are mere speculation as Dr. Scott provides neither evidence nor explanation in the opinion itself or his treatment notes to support these opinions. (*Id.* at 24, 607.) As such, the ALJ did not err in according them "little weight."

Dr. Scott's opinion is also inconsistent with evidence indicating that Plaintiff can return to work without the use of her left arm. The ALJ noted that "more than one of her treating doctors has told her she can return to work without the use of her left hand/arm." (*Id.* at 24.) The ALJ cites previously discussed work status forms from Dr. Scott in which he prescribed "modified work" with "no use of left arm" (*Id.* at 539, 545); a record from Dr. Mitchel Lipton, another treating provider, who stated, "Her work status remains the same, with use of the right hand normally; she cannot use her left hand" (*Id.* at 480); and recommendations from Drs. Joseph Haber and Dennis Crandall, who performed an independent medical evaluation of Plaintiff and recommended work with no use of the left upper extremity and that she wear a splint as needed at work (*Id.* at 481). Thus, the ALJ did not err in according Dr. Scott's opinion "little weight" on this basis.

---

that Plaintiff "has a peripheral mononeuropathy as opposed to complex regional pain syndrome." (R. at 579.)

However, the Court finds error where the ALJ relies on a notation made by Dr. Maxwell. (*Id.* at 24.) The notation, "[Plaintiff] is doing some increased activities," was not a sufficient basis to reject Dr. Scott's opinion. (*Id.* at 535.) First, the ALJ erroneously characterized Dr. Maxwell's notation as an "opinion" of Dr. Scott. (*Id.* at 24.) Second, and more significantly, it is not clear from this notation what particular "activities" Plaintiff was engaging in. Before relying on this notation to find that Dr. Scott's opinion was inconsistent with it, the ALJ should have inquired into the specific nature of the "activities" to determine if they actually contradicted Dr. Scott's limitations. Absent this additional information, this was neither a legitimate reason to reject Dr. Scott's opinion nor one supported by substantial evidence. However, the error in relying on this notation is harmless because the ALJ proffered several other reasons for rejecting Dr. Scott's opinion that the Court finds valid and supported by substantial evidence. *See Treichler*, 775 F.3d at 1099; *Bray*, 554 F.3d at 1227 (9th Cir. 2009).

### C. The Opinions Of The Non-Examining State Agency Physicians Constitute Substantial Evidence That The ALJ Properly Relied On.

Plaintiff alleges that the ALJ erroneously gave "[s]ubstantial weight" to the opinions of Drs. Herbert Meites and L.A. Woodard, non-examining state agency physicians who reviewed her medical records at the initial and reconsideration levels, respectively. (Pl. Br. at 16–19; R. at 25, 61–64 [Meites opinion], 81–84 [Woodard opinion].)

"The opinions of non-treating or non-examining physicians may . . . serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. In weighing the opinions of non-examining physicians, the same factors discussed in the previous section apply.

Here, the ALJ gave "[s]ubstantial weight" to the non-examining physicians' opinions, finding that "[a]lthough not as restrictive as the residual functional capacity evaluation adopted herein, their opinions do support a light exertional level." (R. at 25.) At the reconsideration level, Dr. Woodard considered the medical evidence of record and Plaintiff's reported activities of daily living (*Id.* at 269–71), noting in particular that the

1  evidence showed Plaintiff had full use of her right arm with "mild" assistance from her left
2  arm. (*Id.* at 84.) He concluded that Plaintiff could "occasionally" (1/3 or less of an 8-hour
3  workday) lift and/or carry 20 pounds and "frequently" (1/3 to 2/3 of an 8-hour workday)
4  lift and/or carry 10 pounds. (*Id.* at 81–82.)

The Court finds these opinions consistent with other evidence in the record, in particular, where no doctor noted any deformity or abnormality with respect to Plaintiff's right upper extremity and where doctors had noted that she is able to use her left arm as a "helper" arm. (*Id.* 576, 584, 607.) Additionally, records indicate that Plaintiff's strength improved with physical therapy. (*Id.* at 438–43.) Furthermore, no records indicated issues with Plaintiff's lower extremities. Nevertheless, Plaintiff maintains that the non-examining physicians should not have been given greater weight than Dr. Scott because they did not have access to "key medical records documenting Dr. Scott's continued treatment, including multiple failed medication trials, records noting recommendation for trial spinal cord stimulator, Dr. Scott's assessment, or [Plaintiff's] testimony." (Pl. Br. at 18.) Plaintiff, however, fails to allege how any of this evidence contradicts their opinions, merely insisting, in conclusory fashion, that their failure to consider it "taints" their opinions. (*Id.* at 19.) Upon review of this evidence, none of it suggests any deformity with respect to Plaintiff's right hand or any material change in her daily activities. Moreover, the ALJ properly discounted both Dr. Scott's opinion and Plaintiff's testimony. Thus, Plaintiff fails to show any harmful error here to warrant reversal. *See Molina*, 674 F.3d at 1111 ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.") (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

//
//
//
//
//
//

**IT IS THEREFORE ORDERED affirming** the decision of the Commissioner and directing the Clerk of Court to enter judgment accordingly and to terminate this case.

Dated this 23rd day of March, 2020.

Douglas L. Rayes
United States District Judge